NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0706n.06

No. 10-3445

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 07, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| QI YANG CHEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., United States | ) | |
| Attorney General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |

Before: CLAY and STRANCH, Circuit Judges, and BARRETT, District Judge.[*]

JANE B. STRANCH, Circuit Judge. Like so many immigration petitioners, Qi Yang

Chen's pursuit of asylum was complicated by the failings of his initial attorney. He entered the

United States in 2002 and sought to apply for asylum based on his past persecution under China's

coercive birth control policy. Unfortunately for Chen, his attorney never filed a completed I-589

application for asylum, and after a number of continuances an Immigration Judge denied all forms

of relief as abandoned and adjudged Chen removable. Through new counsel, Chen has twice sought

to reopen his proceedings, and the Board of Immigration Appeals' denial of his second motion to

reopen is the subject of this petition for review. Because Chen has not shown that he is eligible for

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of
Ohio, sitting by designation.

an exception to the time bar or the numerical bar for filing motions to reopen, we **DENY** his petition

for review.

## I.  BACKGROUND

### A.    Factual Background

Chen is a Chinese national who entered the United States without permission in July 2002.

Many years before, in May 1990, Chen married Yun Ru Xu in China.  According to Chen, Xu gave

birth to their first child, a baby girl, on March 1, 1991.  After their daughter's birth, Chinese

authorities required Xu to be implanted with an IUD to prevent another pregnancy.  She also

underwent regular gynecological examinations to ensure that she and Chen were in compliance with

a Chinese law that required couples to wait five years after the birth of a daughter to have a second

child.

In September 1991, Chen and Xu paid a private doctor to remove the IUD, and Xu became

pregnant in October of that year.  Xu went into hiding in a neighboring village, and Chen left for

Fuzhou City to avoid detection by Chinese officials.  However, Chinese officials discovered Xu's

whereabouts, trashed their house, and forcibly aborted Xu's 6-month-old fetus.  The couple was also

fined 300 yuan.

In 1995, Chen and Xu were granted a birth permit, and on July 19, 1996 Xu gave birth to

their second child, a son.  Xu was ordered sterilized, but low blood pressure prevented her safe

sterilization.  Instead, officials forced Chen to undergo a vasectomy in September 1996.  In July

2002, six years after his sterilization, Chen obtained a falsified Chinese passport and U.S. tourist

visa, seemingly with the assistance of human traffickers, and entered the United States through the

port of Detroit. Chen was detained in the airport, sent to an immigration detention facility in Detroit, then paroled. While he was in the United States, Chen's family allegedly received and forwarded to Chen a notice from the Birth Control Office of LangQi Town, China, dated September 15, 2009, informing Chen and Xu that, "[a]ccording to the relevant Population and Family Planning policies and the combined situation of your family, your family has been determined to impose a fine of RMB 30,000."[1]

B.      **Procedural History**

Chen applied for asylum while in detention. He first appeared before an Immigration Judge ("IJ") on September 23, 2002 via video teleconference from detention. Due to difficulties communicating with his attorney, his hearing was continued twice. Chen's attorney submitted a Form I-589 application for asylum on his behalf prior to his November 21 telephonic hearing, but informed the court that the application was incomplete and that he and Chen needed additional time to confer. The hearing was continued a third time to December 17. Because no completed asylum petition was filed, the IJ found that Chen had abandoned his application for asylum and denied all forms of relief from removal.

Chen appealed to the Board of Immigration Appeals ("BIA") on the grounds that his application was complete and that his attorney had not been permitted to participate telephonically at the December hearing. Because Chen's attorney failed to file a written brief in addition to the Notice of Appeal, the BIA dismissed Chen's appeal on May 21, 2003. On March 12, 2007, through

---

[1] 30,000 RMB is roughly $4,700 U.S. dollars.

new counsel, Chen filed a motion to reopen his removal proceedings before the BIA based on ineffective assistance of his prior counsel. On April 30, 2007, the BIA denied the motion as untimely, holding that the 90-day regulatory filing period was not tolled because Chen did not exercise due diligence in pursuing his claim for asylum after discovering in 2005 that his former attorney was ineffective.

On February 8, 2010, Chen's counsel filed a second motion to reopen his removal proceedings and a motion to stay removal. Chen sought reopening based on "new evidence that is material and was not previously available, and on the grounds of changed country conditions." He also sought "sua sponte reopening of these proceedings based upon an egregious error by Immigration Judge Elizabeth A. Hacker." On March 19, 2010, the BIA denied the motion to reopen, finding it violated the time and number limitations for motions to reopen pursuant to 8 C.F.R. § 1003.2.[2] It is from this order that Chen now appeals.[3]

## II. DISCUSSION

### A. Standard of Review

---

[2]It also denied his motion for a stay of removal.

[3]Chen does not appeal the BIA's denial of his motion to reopen removal proceedings sua sponte based on the IJ's alleged error in misconstruing the prior IJ's holding at the November hearing, and thus it is waived. *See Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). Regardless, this Court lacks jurisdiction to hear that argument. *See Gor v. Holder*, 607 F.3d 180, 187 (6th Cir. 2010) (noting that "the decision whether to reopen was within the BIA's discretion, and . . . the court ha[s] no jurisdiction to review [that] administrative decision") (internal citations and quotations omitted).

The BIA's denial of a motion to reopen pursuant to 8 C.F.R. § 1003.2 is reviewed by this Court for an abuse of discretion. *Gordillo v. Holder*, 640 F.3d 700, 702 (6th Cir. 2011). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law." *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007).

**B.      Chen's Successive, Untimely Motion to Reopen Removal Proceedings**

Chen argues that the BIA's denial of the motion to reopen his removal proceedings is contrary to established exceptions to the time and numerical bars on such motions and contrary to binding case law on persecution and prima facie entitlement to asylum. Because we hold that Chen is not exempt from the time and numerical limitations on motions to reopen, we need not address the sufficiency of his prima facie case for relief from removal.

Motions to reopen removal proceedings are subject to numerical and time limitations. Congress has granted aliens the right to file one motion to reopen removal proceedings. 8 U.S.C. § 1229a(c)(7)(A). This numerical limitation does not apply to a motion to apply or reapply for asylum "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). Comparably, a motion to reopen must be filed within 90 days of the date of entry of the final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). This deadline does not apply if the motion relates to an asylum application and that application "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such

5

evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).[4]

Chen's second motion to reopen is subject to both the time and numerical bars. However, Chen argues that those bars do not apply to him, as he has presented material, previously unavailable evidence of changed circumstances. The government responds that Chen's evidence is not of changed country conditions, but of changed personal circumstances, which cannot support a motion to reopen removal proceedings. We agree.

### 1.    Time Bar

This Court has spoken on the legal distinction between changed country conditions and changed personal circumstances. "Without evidence of changed country conditions, however, [Petitioner's] evidence of changed personal circumstances is insufficient to warrant reopening proceedings.*" Liu v. Holder*, 560 F.3d 485, 492 (6th Cir. 2009). The fine notice supplied by Chen does not provide evidence of changed country conditions and, thus, does not support Chen's petition for review.[5]

---

[4]The statutory section of the Immigration and Nationality Act regarding reopening proceedings contains the exception to the 90-day time bar. A subsequent regulatory provision promulgated by the agency contains exceptions to both the time and numerical bars to filing. The regulation copies the statutory provision *nearly* verbatim. *Compare* 8 U.S.C. § 1229a(c)(7)(C)(ii) ("There is no time limit on the filing of a motion to reopen if . . . [it] is based on *changed country conditions* arising in the country of nationality. . . .") *with* 8 C.F.R. § 1003.2 ("The time and numerical limitations set forth . . . shall not apply to a motion to reopen . . . based on *changed circumstances* arising in the country of nationality . . . .") (emphasis added).

[5]The BIA discounted this fine notice because it had not been authenticated pursuant to 8 C.F.R § 1287.6 and also because it does not show changed country conditions. The government conceded at oral argument that § 1287.6 does not provide the only means for authenticating

Chen also points to country reports and news articles he presented to the BIA showing increased enforcement of the Chinese Birth Control Policy, but these documents do not show changed country conditions sufficient to conclude that the BIA abused its discretion in disregarding them. As discussed by the Seventh Circuit, the 2002 Population and Family Planning Ordinance of Fujian Province, where Chen lived and his family continues to live, did indicate an increase in enforcement at the local level. *Lin v. Mukasey*, 532 F.3d 596, 597 (7th Cir. 2008). However, this ordinance predates Chen's removal proceedings, and thus it cannot be evidence of a change in country conditions that was previously unavailable. The more recent articles submitted by Chen do not indicate any significant change in country conditions with regard to China's one-child policy, nor does Chen argue as much in his appellate brief.

## 2. Numerical Bar

Although the language of the regulatory numerical bar differs somewhat from the language of the statutory time bar, this Court has interpreted the time bar and numerical bar identically, to require changed country, not personal, conditions. *See, e.g.*, *Liu v. Holder*, No. 09-4494, 2011 U.S. App. LEXIS 3864, *15 (6th Cir. Feb. 28, 2011); *Wang v. Holder*, 359 F. App'x 589, 596 (6th Cir. Dec. 29, 2009); *accord Guan v. Bd. of Immigration Appeals*, 345 F.3d 47, 49 (2d Cir. 2003) (holding

---

documents in immigration proceedings. That position is consistent with this Court's adoption of the First Circuit's holding in *Yongo v. INS*, 355 F.3d 27 (1st Cir. 2004), regarding authentication. *See Rexha v. Gonzales*, 165 F. App'x 413, 419 (6th Cir. Jan. 31, 2006) ("8 C.F.R. § 287.6 offers one, but not the exclusive, method for authenticating a document in an INS proceeding." (quoting *Yongo*, 355 F.3d at 35). Thus, the BIA's holding that the fine notice had not been properly authenticated was contrary to our case law. However, the BIA's alternative ground for discounting the fine notice is nonetheless correct, as it does not show changed country conditions.

that "evidence . . . of changed personal circumstances . . . does not fit under the exception set forth in 8 C.F.R. § 3.2(c)(3)(ii)"). Thus, for the same reasons Chen's motion is time-barred, it is also numerically barred.[6]

**C.      Chen's Motion to Stay Removal**

Chen filed a motion to stay his removal contemporaneously with his petition for review, which the government opposes. A ruling on this motion on the merits would have required us to confront an issue of first impression in this Court. The second prong of the applicable test set forth in *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009), considers whether the petitioner will suffer irreparable harm absent a stay. In immigration proceedings, this prong of the *Nken* test is of particular importance, as some forms of relief are available to aliens only when that alien is physically present in the U.S. In such a case, removal would moot a petition for review, causing the alien irreparable harm. Motions to reopen arguably present such a situation, as the Attorney General's regulations appear to prevent the agency from entertaining motions to reopen removal proceedings by aliens who are not physically present in the United States. *See* 8 C.F.R. § 1003.2(d). One of our sister circuits has entered a well reasoned opinion holding this regulation invalid as contrary to Congressional intent evidenced in the enabling statute. *See Williams v. Gonzales* 499 F.3d 329 (4th Cir. 2007). We need not resolve the issue of the continuing validity of § 1003.2(d)

---

[6]We note that "an alien may request permission to file a successive, untimely asylum application based upon changed circumstances which materially effect [his] eligibility for asylum" under 8 C.F.R. § 208.4(a)(4). *Guan*, 345 F.3d at 49 (internal citation and quotation marks omitted). The definition of "changed circumstances" in § 208.4 includes changed personal circumstances.

and its effect on our irreparable harm analysis because Chen's motion is now mooted by our denial

of his petition for review.

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the petition for review,  and also **DISMISS** the motion

for a stay of removal as moot.